Charles F. Selby and A. H. Nelson, Trading as Selby-Nelson Engineering Company, Appellees, v. Village of Winfield, Appellant.

Gen. No. 8,007.

filed October 19, 1929.

TENNEY, HARDING, SHERMAN & ROGERS and WILLIAM R. FRIEDRICH, for appellant; S. ASHLEY GUTHRIE, of counsel.

HADLEY & WEAVER, for appellees; HARRY G. WEAVER, of counsel.

Mr. Presiding Justice Boggs delivered the opinion of the court.

An action in assumpsit was instituted by appellees against appellant in the circuit court of DuPage county to recover the amount alleged to be owing appellees on the following contract:

"This Agreement made this 13th day of January A. D. 1927, by and between the Selby-Nelson Eng. Co. of Wheaton, Illinois, party of the first part, and the Village of Winfield (by its President) a municipal corporation of the State of Illinois, party of the second part.

"Witnesseth:

"That Whereas, the party of first part are civil engineers skilled in the making of surveys, estimates, maps, plans, profiles, and detailed drawings and in the supervising the construction of municipal, civil and sanitary engineering work, and

"Whereas, the party of the second part desires to obtain the services of a skilled and competent engineering firm to assist in the carrying out of a certain municipal improvement in the Village of Winfield, Illinois, contemplating the laying of water mains and other necessary appurtenances pertaining thereto within the limits of said Village.

"Therefore This Agreement Witnesseth:

"1. That in consideration of the covenants and agreements hereinafter mentioned, to be performed by the parties, and of the payments hereinafter agreed to be made, it is mutually agreed as follows:

"2. The party of the First part will make the necessary surveys, estimates, profiles, maps, plans, working drawings and specifications, will attend, by their authorized representative, such meetings of the Board of Local Improvements as may be necessary from time to time, will prepare and furnish sufficient sets of typewritten specifications for the improvement contemplated, advise the proper authorities as to the best

and most suitable kinds and materials of construction, will carry out their instructions, and secure the approval of the State Board of Health on matters requiring such approval; will prepare forms for bidding sheets and contracts; will attend lettings and protect the interests of the party of the Second part.

"3. During the construction the party of the First part will furnish such engineering and inspection services as may be necessary to properly supervise and direct the work, give lines and grades, insure proper construction and rigid compliance with the letter and spirit of the plans and specifications.

"4. The party of the First part will by authorized representative make such visits as may be necessary from time to time during the progress of construction, will prepare monthly and final estimates, and will, if requested by the proper official, assist in the final adjudication upon the completion of the work.

"5. Party of the Second part will in consideration of the services hereinbefore mentioned, make payments to the party of the First part, as follows:

"First: Upon the confirmation of the assessments by the County Court, a sum equal to two and one-half (2½) per cent of the total estimated cost of the improvement.

"Second: Monthly, after the beginning of construction work, a sum equal to two and one-half (2½) per cent of the estimated value of the work performed by the contractor during the previous month, the final payment to be made within thirty days, after the time for completion specified, shall be such that the total payments shall equal five (5) per cent of the total cost of the improvement.

"6. It is mutually agreed that this contract shall be effective from the date of its execution by the parties hereto, until completion of the construction work contemplated herein, and all the payments herein-

before described have been made to the party of the First part.

"IN WITNESS WHEREOF the party of the First part has set its hand and seal this 13 day of January A. D. 1927, and the party of the Second part has caused this contract to be signed by its President, and attested by its Clerk.

> "SELBY-NELSON ENG. CO.,
> Party of the First part.
> By CHAS. F. SELBY.
> VILLAGE OF WINFIELD,
> Party of the Second part.
> By O. C. ATKINSON,
> its President.

(CORPORATE SEAL)
"Attest:
MATHIAS E. MUELLER, its Clerk."

Shortly after the signing of the above instrument, appellees entered upon the performance of their duties thereunder, and laid out a tentative scheme or plan for said work. The plans as finally amended were adopted by the board of local improvements of appellant village. An ordinance was prepared and presented to the village board with a recommendation that the same be passed. The total cost of the improvement as estimated by appellees was $60,000. Before the ordinance was acted on by said village board, an election was held and five new members were elected. The village board passed a resolution to the effect that the plans, etc., submitted were not "efficient and proper from an engineering standpoint," and that the purported agreement entered into with appellees be "cancelled" and the services of appellees be "dispensed with and discontinued." After the election of the new village board in May, 1927, appellees wrote to said board, stating that they were ready to proceed with the work to be done under the purported contract, and that they

would hold themselves in readiness to perform thereunder. In the latter part of June, 1927, appellant notified appellees that their services were dispensed with, whereupon suit was brought as above set forth.

The pleadings and assignment of errors in this case are exceedingly prolix. However, it will not be necessary for us to go into a discussion of the rulings of the court on the pleadings, in passing on the questions necessary for a determination of said cause.

One of the principal grounds relied on for a reversal is that the authority of Oliver C. Atkinson, president of said village board, to execute said contract, is not shown by the evidence.

Appellees insist that the verified plea of the general issue is not sufficient to raise this question.

"Where an instrument purports to be executed by an agent, the authority of the agent is a material part of the execution, . . . To require proof of the execution is to require proof of the authority to execute the instrument, and if the execution is denied by a verified plea, the authority of the agent constitutes an essential part of the plaintiff's proof." *City of Chicago v. Peck,* 196 Ill. 260–262. To the same effect are: *Board of Supervisors of Schuyler County v. People,* 25 Ill. 181–184; *Schuyler County v. Missouri Bridge & Iron Co.,* 256 Ill. 348–352; *Walsh v. Marvel,* 130 Ill. App. 305–308; *Illinois Nat. Bank v. Town of Bois d'Arc,* 243 Ill. App. 587–594. In *City of Chicago v. English,* 180 Ill. 476, cited by counsel for appellees in support of their contention, the court at page 479 holds: "Where an instrument is executed by an agent, the plea puts in issue the authority of the agent to do the act." This decision is not in conflict with the above authorities.

It therefore follows that the verified general issue is sufficient to raise said question, and that proof of such authority must be made.

Inasmuch as the purported contract undertakes to involve appellant village in a money liability, such liability must have been authorized by a recorded yea and nay vote of the members of said board, in a regular or called session. Sec. 13, art. 3, ch. 24, ¶ 44, Cahill's St.; *Barr v. Village of Auburn,* 89 Ill. 361–362; *People v. Chicago & E. I. Ry. Co.,* 314 Ill. 352–357; *Crawford v. Board of Education Dist. No. 88,* 215 Ill. App. 198–201; *Arnold v. Village of Ina,* 244 Ill. App. 239–240. Appellees practically conceded that there is no such record, but undertook, by oral testimony, to show that said contract was from time to time discussed by the members of the village board, and that it was executed with their knowledge and approval.

"Where a collection of individuals, designated in a manner provided by law, are created a body to whose care public affairs are committed, the body so created is powerless to act, except together as a body, and where a record of its proceedings is required to be kept, such record is the only lawful evidence of its action, and it cannot be changed by parol proof." *People v. Board of Sup'rs Madison County,* 125 Ill. 334–344; *People v. Carr,* 231 Ill. 502–506; *People v. Warren,* 231 Ill. 518–521; *City of Belleville v. Miller,* 257 Ill. 244–246; *People v. Toledo, St. L. & W. R. Co.,* 270 Ill. 472–476; *People v. Chicago & E. I. Ry. Co., supra,* 412; *Arnold v. Village of Ina, supra,* 240.

If there is a statute prescribing the method by which an officer or agent can bind a municipal corporation by contract, such method must be followed, and there is no implied contract or liability of such municipal corporation. *Tamm v. Lavalle,* 92 Ill. 263–271; *Roemheld v. City of Chicago,* 231 Ill. 467–471; *Arnold v. Village of Ina, supra,* 240.

It therefore follows as a logical conclusion, that said contract was signed by said village president without authority, and that appellant was not bound thereby.

It is insisted that, even though it be conceded that Atkinson had authority to execute said contract, appellant was not bound thereby, for the reason that, at the time said contract was signed, no appropriation had been made to cover the amounts to be paid appellees as such engineers.

Appellees conceded that there was no such appropriation, and offered oral testimony to the effect that there was a tacit understanding with the members of said board, that the amount contracted for was to be paid out of the special assessment to be levied in connection with the installation of said water system. This testimony was admitted over the objections of appellant.

Oral testimony is not admissible to enlarge or vary the terms of a written contract. *American Nat. Bank v. Holsen,* 331 Ill. 622–630; *Davis v. Fidelity Fire Ins. Co.,* 208 Ill. 375–382; *Hunter v. Gates,* 227 Ill. App. 105–107. If it be conceded that appellees had the right to show out of what fund their compensation was to be paid, such showing must have been made from the records of said board. *People v. Chicago & E. I. R. Co., supra,* 412; *Arnold v. Village of Ina, supra,* 240. In *People v. Chicago & E. I. R. Co.,* 306 Ill. 402, the court at page 412 says:

"It is contended on the part of the appellee that the requirement of the consent of the majority of the members of the board of town auditors refers to the individuals who constitute the board, and does not require the official action of the board. The power to authorize the levy of an additional tax is one which it is not to be presumed the legislature would, if it could, confer upon individuals in their private capacity. The act of consenting to the levy of the additional tax is official in its nature. It requires the official action of the board by a majority of its members, and those members must act in their official capacity, at an offi-

cial meeting, and the action of such meeting can be shown only by the record which the town clerk is required to keep.''

To the same effect are: *People v. Board of Sup'rs Madison County, supra; People v. Carr, supra; People v. Warren, supra; City of Belleville v. Miller, supra; People v. Toledo, St. L. & W. R. Co., supra.* The court therefore erred in admitting said oral testimony.

Section 4 of article 7, Cahill's St. ch. 24, ¶ 95, provides among other things:

''No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense.''

Section 208 of division 1 of the Criminal Code, Cahill's St. ch. 38, ¶ 436, provides:

''Every person holding any public office (whether State, county or municipal), trust or employment, who shall be guilty of any palpable omission of duty, or who shall be guilty of diverting any public money from the use or purpose for which it may have been appropriated or set apart by or under authority of law, or who shall be guilty of contracting, directly or indirectly, for the expenditure of a greater sum or amount of money than may have been, at the time of making the contracts, appropriated or set apart by law or authorized by law to be contracted for or expended upon the subject-matter of the contracts, or who shall be guilty of wilful and corrupt oppression, malfeasance or partiality, where no special provision shall have been made for the punishment thereof, shall be fined not exceeding $10,000, and may be removed from his office, trust or employment.''

A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. *Botkin v. Osborne,* 39 Ill. 101; *Wells v. People,* 71 Ill. 532; *Board of Education of Galesburg v. Arnold,* 112 Ill. 11; *Penn v. Bornman,* 102 Ill. 523; *Cincinnati Mut. Health Assur. Co. v. Rosenthal,* 55 Ill. 85; *De Kam v. City of Streator,* 316 Ill. 123–129.

Counsel for appellees, in their brief and argument, state the proposition that "where a village has entered into a legal and binding contract with engineers, for services to be performed in connection with a local improvement, and where the engineers are to be paid out of the funds realized from special assessments, if the village voluntarily abandons the special assessment proceeding, the engineer may, by electing to keep the contract in force and effect, and by being ready, able and willing to continue with the contract, recover the full contract price."

Appellees' position is not tenable. It is based on the erroneous assumption that a valid contract was entered into. Even if there had been such contract, we would not be warranted in holding the village liable for an abandonment thereof, for the reason that we would be compelled to hold that such contract bound appellant to adopt and pass an ordinance for the construction of said work, and that, failing so to do, it had abandoned its contract; in other words, that a city or village could, by contract, take away or limit its legislative powers.

In the passage of ordinances providing for local improvements, a city council or village board is clothed with power to determine what local improvement is required, its nature and character, when it shall be made, and the manner of its construction. These are

matters conferred to the discretion of such bodies, and that discretion, when honestly and reasonably exercised, cannot be reviewed in the courts. *Walker v. City of Chicago,* 202 Ill. 531–538; *English v. City of Danville,* 150 Ill. 92; *Ton v. City of Chicago,* 216 Ill. 331–334; *People v. Omen,* 290 Ill. 59–63.

A legislative body cannot part with its powers by any proceedings, so as not to be able to continue to exercise such powers. It has no authority, even by contract, to control and embarrass its legislative powers and duties. *City of Danville v. Danville Water Co.,* 178 Ill. 299–312, citing Greenhood on Public Policy, p. 317; Cooley's Const. Lim., 206; 15 Am. & Eng. Encyc. of Law, 1045; 1 Dillon on Mun. Corp., sec. 443. See also *Board of Education of Alton Community v. Alton Water Co.,* 314 Ill. 466–470; *Wabash R. Co. v. City of Defiance,* 167 U. S. 88–97–98–100.

Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts, simply because it has done them and received the consideration stipulated for. *Stevens v. St. Mary's Training School,* 144 Ill. 336; *Hope v. City of Alton,* 214 Ill. 102; *May v. City of Chicago,* 222 Ill. 595; *People v. Parker,* 231 Ill. 478; *Eastern Illinois State Normal School v. City of Charleston,* 271 Ill. 602; *De Kam v. City of Streator, supra,* 132.

In the *De Kam* case, *supra,* a bill had been filed by certain taxpayers on behalf of themselves and other taxpayers, to restrain the City of Streator from paying the amount alleged to be due for certain engineering services contracted for by said city, without an appropriation first having been made to cover the same. The court held no right of recovery was shown. An examination of the opinion in that case will disclose that it is peculiarly applicable here, and that it

disposes of practically all of the propositions contended for by appellees. Under that decision, appellees have no right of recovery.

It might be observed that certain of the counts of appellees' declaration were framed on the theory of a *quantum meruit* liability. No evidence was offered under said counts, and counsel for appellees, in their brief and argument, state that they are not seeking a recovery thereunder, but for the contract price of 5 per cent of the estimated cost of said improvement.

Other errors were assigned on the record, but under our holding as above set forth, it is not necessary to discuss the same. No right of recovery is shown in this case. We therefore hold that the court erred in directing a verdict for appellee, and in not directing a verdict in favor of appellant.

*Judgment reversed with finding of facts.*

We find as ultimate facts, to be incorporated as a part of the judgment in this case, that the instrument sued on was signed on behalf of appellant village by O. C. Atkinson, president of the village board, without authority from said board; that said instrument was not a valid and binding contract as against appellant, and that; even if said instrument were valid, there was no appropriation on which to base the same.